```
1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF FLORIDA
2                              MIAMI DIVISION
                        CASE NO. 1:19-cv-21625-DPG
3
     GROVE GARDEN RESIDENCES
4    CONDOMINIUM ASSOCIATION, INC.

5             Plaintiff,                         July 1, 2019
                                                 1:28 p.m.
6             vs.

7    ROCKHILL INSURANCE COMPANY and
     CERTAIN UNDERWRITERS AT
8    LLOYD'S LONDON,

9             Defendants.                   Pages 1 THROUGH 20
     _____
10

11                   TRANSCRIPT OF DISCOVERY HEARING
                 BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
12                   UNITED STATES MAGISTRATE JUDGE

13

14   Appearances:

15   FOR THE PLAINTIFF:    SIEGFRIED RIVERA, PA
                           EYAL S. EISIG, ESQ.
16                         201 Alhambra Circle, 11th Floor
                           Coral Gables, Florida 33134
17

18   FOR THE DEFENDANT:    LEVY LAW GROUP
                           LAUREN D. LEVY, ESQ.
19                         3399 Ponce de Leon Boulevard, Suite 202
                           Coral Gables, Florida 33134
20

21   COURT REPORTER:       Yvette Hernandez
     REPORTED FROM         U.S. District Court
22   THE DIGITALLY         400 North Miami Avenue, 10-2
     ASSISTED RECORDING    Miami, Florida 33128
23   SYSTEM                yvette_hernandez@flsd.uscourts.gov

24

25
```

```
 1          (Call to order of the Court, 1:28 p.m.)
 2              COURTROOM DEPUTY:  Grove Gardens Residences
 3    Condominium Association, Inc. v. Rockhill Insurance Company, et
 4    al, Case Number 19-21625, Civil, Gayles.
 5              Counsel, please state your appearances for the record.
 6              MR. EISIG:  Certainly.
 7              Eyal Eisig, of Siegfried Rivera, for the Plaintiff,
 8    Grove Gardens Residences Condominium Association.
 9              MS. LEVY:  Good afternoon, Your Honor.  Lauren Levy on
10    behalf of both Defendants.
11              THE COURT:  All right.  Thank you.
12              You may be seated, except when addressing the Court.
13              I received a last-minute request to cancel this
14    hearing and then ultimately I received the Plaintiff's
15    opposition.  Given the opposition, I did not cancel the
16    hearing.  And so I have the items listed in the Notice of
17    Hearing.  They have to do with the First Request for
18    Production, privilege log, and deposition, I believe.
19              So have any of these things been resolved?  And if
20    not, I guess we'll have to take them one at a time.  Item 1 has
21    to do with objections to First Request for Production.
22              MR. EISIG:  Yes, Your Honor.
23              May I address that?
24              THE COURT:  Yes.
25              MR. EISIG:  So with respect to item 1, what we have
```

1    here are responses where -- aside from the first one, where the
2    Defendant purports to say that they'll provide it, which they
3    haven't, we have every single objection boilerplate form
4    objections that are not allowed by this Court, with work
5    product and attorney-client privilege to matters that are
6    completely devoid of including that, statements taken of the
7    Plaintiff, dates and times for inspection.
8            We filed this complaint in February.  It was served in
9    March.  And they -- the Defendant themselves promised to
10   provide documents.  There was an order of the Court in May, and
11   we've never received the responsive documents.
12           We have their responses, which are completely and
13   totally improper.  They are just standard boilerplate
14   objections.  And that's why we also have an issue with failure
15   to provide any documents and any purported privilege log.  We
16   believe those things should have waived.
17           THE COURT:  I'm sorry.  You referred to a court order?
18           MR. EISIG:  Yes.  There was an extension that the
19   Defendant requested in May, on May 2nd -- and the Court granted
20   it.  It was unopposed -- that they would be providing their
21   responses by May 16th.  And that was not done.
22           THE COURT:  I see something about response to
23   Plaintiff's complaint on May 2nd.
24           MR. EISIG:  It was for extension of time to respond to
25   both the complaint and to respond to the production of

1   documents.

2          They did respond and honored the extension of time for

3   their answer.  They responded on the 16th, but they did not

4   provide the production.  They provided their responses on the

5   22nd, with these improper objections.

6          THE COURT:  All right.  So generally, what I do is I

7   just go down the list and rule on the objections, either

8   overrule them or sustain them.  So if you could provide me with

9   that response and tell me which ones you want me to address.

10          MR. EISIG:  Okay.  Do you need an additional copy?

11          THE COURT:  Do I have a copy already?  Did you submit

12  a copy to the Court?

13          MR. EISIG:  I apologize --

14          THE COURT:  I mean, if you filed it, I have -- I can

15  access it electronically if you filed it.

16          MR. EISIG:  Yes.  It was filed electronically, I

17  believe.

18          THE COURT:  It was filed in the record?

19          MR. EISIG:  There should be the Defendant's response

20  to Plaintiff's first request.

21          Is it not filed or ...

22          MS. LEVY:  We normally don't file discovery in federal

23  court.

24          MR. EISIG:  So I could provide a ...

25       (Pause in proceedings.)

1          MR. EISIG:  I have my copy.  I marked it.  I
2  apologize.
3          THE COURT:  I'm sorry.  We can't work off your copy if
4  it's marked up.
5     (Pause in proceedings.)
6          MS. LEVY:  Your Honor, I only have my own copy too,
7  with handwriting all over it.  Otherwise, I would offer it for
8  your benefit.
9          MR. EISIG:  I just marked the first two pages
10 slightly, just with the numbering of the case law, nothing
11 other than that.
12         THE COURT:  No.  I'm not looking at something that's
13 been marked up by an attorney.  I'm not going to create
14 record -- a record error in the case.
15         All right.  I'll just have to listen.
16         MR. EISIG:  Okay.  For the record, the responses --
17 the second request was for all statements taken of the
18 Plaintiff.  And the Defendant objected as work product,
19 attorney-client privilege, and irrelevant.  And then --
20         THE COURT:  Sorry.  This is a claim for what, for
21 Irma?
22         MR. EISIG:  Yes, Your Honor.
23         THE COURT:  Okay.  All right.  And how does the
24 insurance company do this thing?  Do they ask for whatever that
25 is that the -- that affidavit of proof or something that it's

```
 1    called?  Is that how they operate?
 2              MR. EISIG:  I'm not sure I understand.  You mean --
 3              THE COURT:  Generally, insurance companies ask for an
 4    affidavit of proof.
 5              MR. EISIG:  Oh, yes.  A proof of loss.
 6              THE COURT:  Right.  That's what I meant.
 7              MR. EISIG:  Right.
 8              THE COURT:  Proof of loss.
 9              Okay.  And they won't provide that with you?
10              MR. EISIG:  They won't provide --
11              THE COURT:  You -- you wrote that.  So -- so why do
12    you need it from them, the proof of loss?
13              MR. EISIG:  Well, we need the statements that they're
14    taking.  Not only have they, you know, asserted affirmative
15    defenses, they're making all kinds of claims about what our
16    client has said.  So we're -- we're requesting from them the
17    statements, and they're just using boilerplate objections
18    saying that that's their own work product and attorney-client
19    privilege.
20              THE COURT:  I'm sorry.  How -- Ms. Levy, how does this
21    insurance company go about things?  After getting the proof of
22    loss, they what?  Do they interview or depose the -- I imagine
23    the principal of the condo association?
24              MS. LEVY:  Your Honor, if I may.
25              The request is -- for number 2 is:  "All statements
```

1    taken of the Plaintiff."  It's not related to any sworn
2    statement and proof of loss or limited to any examination under
3    oath, per the policy.  It simply says:  "All statements taken
4    of the Plaintiff."  And Defendants have objected on various
5    objections, not just work product and attorney-client, but
6    rather, work product, attorney-client, claim file materials
7    that would be irrelevant in a first-party breach of contract
8    case, irrelevant, or the relevancy, given that there is no bad
9    faith count, any statements that could have been given by the
10   Plaintiff in conversation to our consulting experts.  We also
11   raised that as an objection, as well as the underwriting file,
12   which is a big objection on pretty much every single one of
13   these requests, Your Honor.  So you'll see a theme running
14   through it.
15          By saying "all statements," it's not limited to by
16   who, when, where, before the loss, before the policy was -- you
17   know, the inception of the policy, and so on.  So we -- we
18   objected on all of those grounds.  So there's no procedure, to
19   answer your question more directly, Your Honor, that we -- the
20   insurance companies or the carriers would follow because this
21   doesn't even have any information regarding a proof of loss.
22   It's not asking about statements taken after a proof of loss
23   was submitted or after one was requested.
24          So to clarify, we objected on all of those grounds
25   because it doesn't ask -- it's not asking for anything specific

```
 1    and we don't know with any specificity how to respond.  If
 2    there's none, there's none.  But if it's pre-suit, pre-policy
 3    inception, post-loss -- and what kind of statements, a sworn
 4    statement or something in a conversation?
 5            I'm not sure what counsel is referencing as far as any
 6    allegations by the Defense in its answer and affirmative
 7    defenses as to statements made by the Plaintiff.  I'm not aware
 8    of that.  If there is something specific, I'm happy to address
 9    it.  But I am not aware of that.
10            And so our -- our objections are more than just work
11    product and attorney-client.  It's -- it goes across the entire
12    board.
13            THE COURT:  I don't see how you can have
14    attorney-client privilege vis-a-vis the Plaintiff, but let me
15    see.
16            Is the genesis of this an affirmative defense, did you
17    say?  I'm looking at them here.
18            MR. EISIG:  Well, they're claims about -- in terms of
19    how the policy has been adhered to.  They're making claims
20    regarding the Plaintiff's adherence to the policy -- in your
21    affirmative defenses.  So we require all statements that they
22    have that would go to prove that.
23         (Pause in proceedings.)
24            THE COURT:  Sorry.  I'm looking at the -- there's a
25    counterclaim, right?
```

1         MS. LEVY:  Yes, Your Honor.
2         MR. EISIG:  And those same allegations are made in the
3    counterclaim as well.
4         THE COURT:  Well, obviously, if you -- if you have --
5    if you have a question or a request for production that simply
6    is overly broad, then that needs to be narrowed.
7         Usually, what I do at these hearings is I try to
8    narrow it so that we can resolve the dispute and move along.
9    But I'm still trying to find Defendant's answer.
10        (Pause in proceedings.)
11        THE COURT:  Defendant's answer.  Here we go.
12        (Pause in proceedings.)
13        THE COURT:  So I'm scrolling down the answer to the
14   affirmative defenses to see where this is linked to.
15        All right.  First affirmative defense, deductible;
16   second, preexisting; third, excluded; fourth, faulty planning,
17   whatever, whatever, remodeling.
18        Snow in Miami?  That's funny.
19        (Pause in proceedings.)
20        THE COURT:  Is this the one:  Failed to comply with
21   the policy's duties?  Is this the one that you're hanging your
22   hat on, the ninth one?
23        MR. EISIG:  Yes.  But it also refers to preexisting
24   claims, or exclusion, the applicability of that by statements.
25        THE COURT:  Not preexisting claim.  Preexisting --

```
 1                MR. EISIG:  Damages.
 2                THE COURT:  -- damages.
 3                MR. EISIG:  Right.
 4                THE COURT:  All right.  So -- so is there some kind of
 5     adjustor that went to investigate this claim?
 6                MS. LEVY:  Yes, Your Honor.  After the claim was
 7     reported --
 8                THE COURT:  Uh-huh.
 9                MS. LEVY:  -- we did have more than one adjustor that
10     went out to inspect the property once notice was received, yes.
11                THE COURT:  Okay.  And are you trying to get the
12     interaction between the principal of the condo association and
13     the adjustor?  Is that what you're trying to get at?
14                MR. EISIG:  The statements that the Plaintiff has --
15     that support their claims, what they have as a record.
16                And these are -- these are matters that were done
17     before the filing of the lawsuit.  So ...
18                THE COURT:  Yeah.  But investigating the claim.  As
19     soon as they know that there's a claim, then their work product
20     privilege kicks in.
21                MR. EISIG:  Right.  But the knowledge of the claim
22     would be when the suit was filed.  And that would be in
23     February.
24                THE COURT:  No.  When demand was made, right?  When
25     was demand made, right after Irma?
```

1  MS. LEVY: Yeah. I believe it was -- the public
2  adjustor's first notice to the Defendants was within a month,
3  about a month after the storm.
4  THE COURT: And then your own adjustors went out.
5  MS. LEVY: Correct.
6  THE COURT: Yeah. You can't get into the
7  adjustor's -- that's -- the adjustor is an agent of the
8  Plaintiff.
9  MR. EISIG: But the --
10  THE COURT: I would imagine that --
11  MR. EISIG: They have independent obligations. And
12  work product and privilege would attach from the time that they
13  were aware of suit. And that would be from when the suit was
14  filed. Prior, we're entitled to that discovery.
15  THE COURT: Let me hear from Ms. Levy. What is your
16  position on that? When does the work product, in your view,
17  kick in?
18  MS. LEVY: Well, twofold, Your Honor. First, I -- I'm
19  not following -- and I apologize to Court and to counsel -- as
20  to the argument being made by counsel regarding statements.
21  It's statements of the Plaintiff. So anything my adjustor or
22  adjustors may have said --
23  THE COURT: No. No. Statements by the Plaintiff, not
24  by the adjustor, right?
25  MR. EISIG: Right.

1        MS. LEVY:  Yes, Your Honor.  It says:  "Statements
2   taken of the Plaintiff."
3        THE COURT:  Correct.
4        MS. LEVY:  As far as any work product would be
5   concerned, it's not at the time suit is filed.  It is from the
6   anticipation of litigation, which in this matter was the first
7   notice by the public adjusting firm, which was the only notice
8   received, and that was from the public adjustor.  And then
9   there was also a civil remedy notice filed with the Department
10  of Financial Services thereafter, and then the suit.
11       So regardless of whether there is any anticipation of
12  litigation, I still -- I can't -- I'm having a hard time with
13  how broad it is to even say whether -- whether there were any
14  statements.  If it's a written statement, a recorded statement,
15  a statement under oath, I could answer that and tell the Court
16  as an officer the Court that there are none of those types of
17  statements.  But it's just -- it's not asking for that very
18  specifically.
19       THE COURT:  Okay.  All right.  I'm going to sustain
20  the objection there on the multiple grounds that have been
21  asserted, but mainly on the work product because -- once the
22  adjustor comes and makes inquiries.
23       Now, if you have a proof of claim, obviously, that is
24  not protected.  That is something that the -- have you -- I
25  mean, but the Plaintiff himself did the proof of claim.  I

```
 1    don't know why they need to get it from you.
 2              MS. LEVY:  Well, interestingly enough, Your Honor,
 3    later on in these requests --
 4              THE COURT:  All right.
 5              MS. LEVY:  -- they ask for all documents that the
 6    Plaintiff gave the Defendants.
 7              THE COURT:  All right.
 8              MS. LEVY:  Which of course, they would have.
 9              THE COURT:  Okay.  All right.
10              What else are you looking for?
11              MR. EISIG:  Okay.  Well, I mean, here, the Defendant
12    themselves had said that to the extent it wasn't a privileged
13    document they would provide the documentation.  So I want at
14    least those documents that are statements of the Plaintiff that
15    they're not claiming are privileged.
16              THE COURT:  Well, if you're claiming privilege, the
17    thing is you don't need a privilege log once the lawsuit
18    starts.  So whatever privilege is being claimed for pre-suit,
19    you have to serve a privilege log, which it sounds to me like
20    you haven't.
21              MS. LEVY:  No, Your Honor.  And that was part of the
22    reason of the motion to continue the hearing, was we found out
23    there was perhaps additional claim file documents.  And yes, a
24    privilege log should have been served back in May when this
25    was -- when this was served.  I agree with the Court.  But we
```

1  will be getting one today.  I actually made the offer to
2  counsel today that if I got IT to him today -- whether they
3  would agree.  Obviously, we had the motion pending before Your
4  Honor and it's ultimately the Court's decision.  But we will
5  have a privilege log with everything.
6          THE COURT:  All right.  So you need to serve your
7  privilege log.  How soon can you do it?
8          MS. LEVY:  We can have it by the end of the week, Your
9  Honor, if that's okay.
10         THE COURT:  By Friday the 5th?
11         MS. LEVY:  Yes.
12         THE COURT:  Okay.  And then have you produced any
13 documents at all?
14         MS. LEVY:  No.  And that will also be coming at the
15 same time.
16         THE COURT:  And why haven't you produced any
17 documents?
18         MS. LEVY:  I wish I could answer the Court with
19 anything other than -- and I hate doing this, but I wasn't
20 handling that part of the discovery, but -- and that's no
21 excuse.  And I know that, Your Honor.  I think it was because
22 we were waiting for the remainder of the file.  And now we have
23 it.  And -- and actually, we just got it.  So every --
24 everything from both portions of the file will be produced
25 immediately.

```
 1              THE COURT:  All right.  So produced by Friday also.
 2              MS. LEVY:  Okay.
 3              THE COURT:  All right.  What else?
 4              MR. EISIG:  Well, those were two items that we had
 5   respectfully requested a waiver on that they failed to produce
 6   it for all this time, that they shouldn't be entitled to
 7   produce it at such a late date.
 8              THE COURT:  Yeah.  But a waiver of privilege is pretty
 9   strong.  I'm not going to impose that kind of a -- of a -- of a
10   penalty.
11              MR. EISIG:  I respect that.
12              THE COURT:  You -- you can -- you can contest the
13   privilege log claims.  We can address those once you get that
14   privilege log.
15              MR. EISIG:  Okay.  I just also want to address with
16   the Court we've had significant issues with communications.
17   We've attempted numerous times -- I put it in our objection to
18   rescheduling the hearing -- five times just to get this
19   hearing.  Before that, we've had dozens of communications,
20   literally over a dozen on the scheduling order and getting
21   dates.
22              To date, we have one date for deposition for the
23   several that we're scheduling.  This is a recurring pattern;
24   not getting any discovery and then having to ask for a hearing
25   and then being blocked.  We were literally blocked for days on
```

```
 1    end because they refused to schedule it.
 2              We just don't appreciate that we have to expend so
 3    much effort and cost.  We had to unilaterally schedule the
 4    scheduling order and continuously have to provide notice of
 5    emails and calls.
 6              So we really feel that it's not fair that -- the cost
 7    and expenses that we're bearing because of the inability to get
 8    compliance on the Defendant's part.
 9              THE COURT:  Ms. Levy, what's your answer to that?  I
10    thought you hinted at it, that apparently this wasn't being
11    managed properly before?
12              MS. LEVY:  Well, first and foremost, Your Honor, as
13    far as the scheduling is concerned -- and I'm going to just say
14    it -- because they call us five times a day or they email us
15    five times a day doesn't mean we're ignoring the emails.  They
16    just want a response within a five-minute turnaround.  And in a
17    perfect world, I wish I could say that can happen.  But
18    everybody's busy.  I know they're busy.  I know we're busy.  So
19    it's no intent to ignore them in any way, shape, or form.
20              Also, the scheduling order wasn't issued by the Court
21    until June 24th and our initial disclosures for both sides
22    haven't been exchanged as of today.  We did mutually agree on
23    one of the corporate representative's depositions.  The other
24    one's being worked on right now.  We should have a date
25    hopefully by the end of today or tomorrow for Lloyds.
```

```
 1            THE COURT:  Okay.  So when is the one that you have
 2   agreed to?
 3            MS. LEVY:  The corporate representative of Rockhill
 4   will take place on August 29th.
 5            THE COURT:  August 29th?
 6            MS. LEVY:  Yes, Your Honor.
 7            THE COURT:  Okay.  And when will you have a date for
 8   the second one?
 9            MS. LEVY:  I believe -- I mean, we were in
10   communication last week and this morning as well.  I hope to
11   have a date in the next day, hopefully.
12            I mean, everyone's --
13            THE COURT:  I'm going to give you that same Friday the
14   5th deadline --
15            MS. LEVY:  Okay.
16            THE COURT:  -- for a date for second corporate rep.
17            MR. EISIG:  Adjustor?
18            THE COURT:  Well, whoever.
19            MS. LEVY:  I believe you requested the corporate
20   representative of Lloyds.
21            MR. EISIG:  Oh, of -- yes.  Of the other Defendant.
22   Absolutely.
23            THE COURT:  Date for second corporate rep by Friday.
24            MS. LEVY:  Okay.  Thank you, Your Honor.
25            THE COURT:  Okay.  What else can I assist you with,
```

1  Mr. Eisig?

2        MR. EISIG:  Okay.  And I would just ask that the

3  responses be -- rather than the boilerplate form that have been

4  used -- I don't believe that these are responses that are

5  appropriate for this Court.  I would ask that they revise their

6  responses to be more appropriate, in terms of, you know,

7  especially -- we asked for dates and times of when the property

8  was inspected and we got the same attorney-client privilege.

9        THE COURT:  That's not protected.

10        MS. LEVY:  That's not protected, Your Honor.  I -- I

11  concede that the attorney-client privilege would not apply to

12  that.  However, they asked for certain documents regarding

13  dates and times that the property was inspected.  Well, that's

14  sort of disingenuous to the extent that Plaintiff opened up the

15  property for my consultants or my client's consultants or

16  adjustors to inspect.  They were coordinated with Plaintiff and

17  its public adjustor.  There are other requests in this Request

18  for Production asking for all communications between the

19  Plaintiff and Defendants.  Again, that's something they would

20  have and would have knowledge of.

21        I agree about the attorney-client privilege, Your

22  Honor, and we will amend that to make sure that any documents

23  that that does not apply to, it will be removed.

24        THE COURT:  All right.  So you will amend your

25  responses to the Request for Production with specific

```
 1    objections, if appropriate, and produce everything else.
 2             MR. EISIG:  And that will also be done by the 5th?
 3             THE COURT:  Yeah.  Because she will be producing by
 4    the 5th also.
 5             Okay.  Let's hope this case gets back on track.
 6             MR. EISIG:  And as far as the costs to have to come to
 7    court?
 8             THE COURT:  I will not do them at this point in time.
 9    But I will caution Defense counsel that if they don't get this
10    discovery going, I will not look favorably on you if the
11    Plaintiff needs to come back to court.
12             All right.  Thank you.
13             MS. LEVY:  Understood, Your Honor.
14             Thank you.
15             MR. EISIG:  Understood, Your Honor.
16             Thank you.
17             COURTROOM DEPUTY:  Court's adjourned.
18         (Proceedings concluded at 1:53 p.m.)
19
20
21
22
23
24
25
```

```
 1    UNITED STATES OF AMERICA       )

 2    ss:

 3    SOUTHERN DISTRICT OF FLORIDA   )

 4                    C E R T I F I C A T E

 5           I, Yvette Hernandez, Certified Shorthand Reporter in

 6    and for the United States District Court for the Southern

 7    District of Florida, do hereby certify that I

 8    transcribed the digitally-recorded proceedings had the 1st day

 9    of July, 2019, in the above-mentioned court; and that the

10    foregoing transcript is a true, correct, and complete

11    transcript of the digital recording.

12           I further certify that this transcript contains pages

13    1 - 20.

14           IN WITNESS WHEREOF, I have hereunto set my hand at

15    Miami, Florida this 11th day of October, 2019.

16

17                       /s/Yvette Hernandez
                         Yvette Hernandez, CSR, RPR, CLR
18                       Certified Shorthand Reporter
                         400 North Miami Avenue
19                       Room 10-2
                         Miami, Florida 33128
20                       (954) 769-5686
                         yvette_hernandez@flsd.uscourts.gov
21

22

23

24

25
```