```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                          MIAMI DIVISION
                   CASE NO.  19-21625-CIV-DPG


GROVE GARDENS RESIDENCES
CONDOMINIUM ASSOCIATION, INC.,

            Plaintiff,

    vs.
                                      Miami, Florida
                                      December 18, 2019
ROCKHILL INSURANCE COMPANY and        Pages 1-19
CERTAIN UNDERWRITERS AT LLOYD'S
LONDON,

            Defendants.
_____

             TRANSCRIPT OF TELEPHONIC HEARING
       BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
             UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

FOR THE PLAINTIFF:
                    Siegfried Rivera
                    BY:  SUSAN ODESS, ESQ.
                    201 Alhambra Circle
                    11th Floor
                    Coral Gables, Florida 33134

FOR THE DEFENDANTS:
                    Levy Law Group
                    BY:  LAUREN D. LEVY, ESQ.
                    3399 Ponce de Leon Boulevard
                    Suite 202
                    Coral Gables, Florida 33134

TRANSCRIBED BY:     DAWN M. SAVINO, RPR
                    Official Court Stenographer
                    400 N. Miami Avenue, 10S03
                    Miami, Florida  33128
                    Telephone:  305-523-5598
```

1                    P-R-O-C-E-E-D-I-N-G-S
2              COURTROOM DEPUTY:  The United States District Court is
3     now in session, the Honorable Magistrate Judge Alicia M.
4     Otazo-Reyes presiding.
5              Calling the case of Grove Gardens Residence Condominium
6     Association versus Certain Underwriters at Lloyds of London,
7     case number 19-21625-civil-Judge Gayles.
8              They're on the line.
9              THE COURT:  Tell them to enter their appearances.
10             COURTROOM DEPUTY:  Oh.  Counsel, please enter your
11    appearances starting with the Plaintiff first.
12             MS. ODESS:  Good afternoon, Your Honor.  Susan Odess
13    from Siegfried Rivera on behalf of the Plaintiff, Grove Gardens
14    Residences Condominium Association, Inc.
15             MS. LEVY:  Good afternoon, Your Honor.  Lauren Levy on
16    behalf of both Defendants, Rockhill Insurance Company and
17    Certain Underwriters at Lloyds of London.
18             THE COURT:  All right.  It appears to me that the words
19    I spoke at our last hearing fell on deaf ears.  Instead of
20    resolving issues, issues are becoming more confrontational, more
21    convoluted and we don't seem to see the light at the end of the
22    tunnel with regard to discovery in this case.  I am now being
23    confronted with one, a request for conference because there
24    couldn't even be agreement on when counsel were available to
25    have a discovery hearing in accordance with the procedure that

is dictated in this case.  I've also received motions for protective order, even though the protocol here prohibits the filing of discovery motions, and I have received some kind of submission with a bunch of cases that I'm supposed to be reviewing.  I'm not quite sure what the purpose of that is.  But basically, it doesn't seem to me that case law is the answer to the problems that Counsel keep creating.  It seems to me that Counsel are showing an inability to work cooperatively to advance the discovery that is required in this case.

As things stand right now, the deadline for discovery is less than two weeks away and there has been no progress.  All I see is roadblocks, objections.  I see that somebody is supposed to show up at a deposition at the same time that somebody else is supposed to show up at a deposition.  I told Counsel at the end of the last hearing that if this kind of behavior continued, I would be inclined to refer both counsel to the Court's Peer Review Committee.  I had hoped that that warning would make people realize that they cannot continue in this course of action.  As I said at the beginning, it seems like that warning fell on deaf ears.  I don't even know where to begin with all of these new disputes that have been presented to me, but I will hear first from Ms. Odess who filed the initial expedited motion for status conference, Docket Entry 87, and you can tell me what relief you are seeking, Ms. Odess.

MS. ODESS:  Of course, Your Honor.  And first and

```
 1    foremost, I just want to say the warning that the Court provided
 2    at the last hearing I take very seriously, and my office, as you
 3    can see from the documents we submitted to the Court, which, you
 4    know, I know that you probably didn't have an opportunity to
 5    review, but, I mean, we have done everything in our power to try
 6    and comply with discovery.  We've done everything to give them
 7    all the dates that they've requested, and we contacted their
 8    office in writing through correspondence, as well as
 9    telephonically to try and do everything to facilitate the
10    scheduling and confirmation of depositions moving forward.  So I
11    want to be very clear that there aren't antics on my end.  I've
12    complied with all depositions that they've asked for.  I've
13    given numerous dates and I'm the one that's being roadblocked.
14            What I'm asking for is relief by way of several things.
15    The first and the easiest would be the Defendant's corporate
16    representative.  We've been asking for these depositions for
17    over seven months.  The deposition of Sherri King, who is the
18    corporate representative for Rockhill, was previously noticed on
19    two prior occasions.  Ms. Levy agreed to produce her in Miami,
20    Florida.  I produced to you the e-mail where she agreed to
21    produce in Miami, Florida back in the summer.  Then in August, I
22    believe it was August 12th of 2019, she contacted me and asked
23    if the deposition that I had scheduled for August, if we can
24    move it for the date after mediation which was 11-20-2019 and
25    said that as you know, the deposition of my client is scheduled
```

1   for next week, 8-21 in Miami, per my client's agreement to
2   appear in Florida.  And she said because we have mediation in
3   Miami, can we move it to the day after mediation, and as a
4   professional courtesy, I obliged and I said that that was fine.
5   She cancelled mediation and she cancelled the deposition because
6   she had a trial set.  So since that time period, I've been
7   asking for additional dates, and we were just given, for the
8   first time about a week ago, the date for Ms. King's deposition
9   in St. Louis, Missouri, and she had previously consented to
10  Miami, it's been noticed on two prior occasions for Miami.  St.
11  Louis is not the principle place of business for the deponent,
12  I'm sorry, for the insurance company, so there would be no
13  reason why it would have to take place there.
14          But more importantly, it would require me to leave my
15  family on Christmas to have to fly to St. Louis, Missouri to
16  take a deposition of an individual who, pursuant to the case
17  law, has already submitted to the jurisdiction of the Southern
18  District of Florida.  And as they're a counter-Plaintiff in this
19  case, the case law says that they agree to submit to the
20  jurisdiction.  So the case law is behind me.  They agreed in
21  writing to appear in Miami on two separate occasions.  We
22  provided professional courtesies to them to have them be
23  rescheduled and then at the last minute, I'm being told it has
24  to be the day after Christmas in St. Louis, Missouri where
25  that's not where the case law supports and that's not fair,

1    that's not equitable, and so I'm asking that the deposition
2    proceed in Miami.
3            THE COURT:  All right.  Ms. Levy, would you like to
4    address the issue of Ms. King's deposition?
5            MS. LEVY:  Yes, I would, Your Honor and thank you for
6    giving us the opportunity to air this out.  Unfortunately, it
7    has come to this point, but I believe what Counsel is saying is
8    inaccurate.  The only time we agreed to produce the corporate
9    representative in Miami was because we were having mediation in
10   Miami and that it made sense since my client was flying in --
11   and this is the corporate representative of Rockhill, not Lloyds
12   -- to have it the day after.  And unfortunately, both at
13   mediation and the deposition fell during the week where I was
14   called to trial that Your Honor was made aware of at one of the
15   previous hearings.  We -- and Counsel had previously set not
16   just the corporate representative of Rockhill in St. Louis, but
17   also the corporate representative of Lloyd's is another issue,
18   he's in West Palm Beach and it has been set at least twice
19   before by Plaintiff in Palm Beach without question.  And now all
20   of a sudden we get the other day --
21           THE COURT:  I'm sorry.  I'm sorry.  Ms. Levy, stick to
22   Rockhill.
23           MS. LEVY:  I'm sorry.  I'm traveling.
24           THE COURT:  Stick to Rockhill and Ms. King.
25           MS. LEVY:  Okay.  Okay.  Ms. King and Rockhill, she

```
 1    resides and lives in southern Illinois which is closest to St.
 2    Louis, Missouri.  She was previously set in St. Louis and at the
 3    time of mediation we said look, she's flying in --
 4            THE COURT:  Ms. Levy, Ms. Levy.
 5            MS. LEVY:  Yes.
 6            THE COURT:  Let me ask you this question.  Is Ms. King
 7    being offered as Rockhill's corporate representative?
 8            MS. LEVY:  Yes, she is, Your Honor.  And we filed a
 9    motion for protective order because we believe the case law --
10            THE COURT:  What does her residence have to do with her
11    appearance at a corporate representative if Rockhill has
12    counter-claimed in this action?
13            MS. LEVY:  Well Your Honor, our motion for protective
14    order spells out that this is a compulsory counterclaim in which
15    if we had not done it, you know, it would have been waived or --
16    not been waived, I'm sorry.  So the case law that we cited in
17    our motion for protective order, and forgive me Your Honor, I'm
18    traveling which is why I could not make any other hearing this
19    week.  I actually pulled off the side of the road to do this
20    right now.  I'm driving, and I can pull up the motion, but we
21    did cite to the cases that the Court -- our position that
22    because it's a compulsory counter-claim, that neither corporate
23    representative, stick to Rockhill, subjects themselves to the
24    jurisdiction of having to appear in Florida for their
25    deposition.  And a declaratory judgment action counter-claim
```

```
1    falls within that as well.
2            THE COURT:  Well, let me ask you this question, Ms.
3    Levy:  Under what authority did you file this motion for
4    protective order?
5            MS. LEVY:  Under Rule 26 and Rule 13, Your Honor.
6            THE COURT:  Are you aware of what protocol governs this
7    case where discovery motions are not allowed?
8            MS. LEVY:  Oh, I'm sorry, okay.  I thought you were
9    saying the basis of the motion itself.  Yes, I am aware.  I
10   believe, Your Honor, this was an imminent circumstance.  I
11   actually gave case law to opposing counsel to please look at it
12   and hopefully change their mind because this was, I believe, a
13   tactic since they have since -- prior set these notices for the
14   deposition in the places of where both corporate representatives
15   are located.  And then I'm not sure if a light bulb went off or
16   something, and they decide to now change that when we had
17   originally given the date for 12-26 in St. Louis.
18           And yes, Your Honor, I don't know what to say about
19   filing the motions, but I didn't know how else to address it at
20   this point.
21           THE COURT:  Well, the way to address it is the way that
22   the protocol tells you to address it.  Meet and confer and
23   request a date.
24           Now, the motion that Plaintiff filed was because they
25   attempted to meet and confer and get a date and they did not
```

1    succeed in doing that.  And this is just a prime example of the
2    issues that we're having in this case where counsel are at each
3    other's throat, physically not, but obviously figuratively, and
4    they are like ships pass not guilty the night.  One is speaking
5    one language, the other one is speaking a different language and
6    never the twain shall meet.  So again, we have issues that keep
7    cropping up and keep getting blown out of proportion time and
8    again.
9            Now, compounding the pressure that is being felt in
10   this case is the fact that you all are operating under a
11   discovery deadline of December 31st right in the middle of the
12   holidays, and rather than trying to ease the burden on each
13   other, you're just willy-nilly making each other suffer.  Like
14   for example, Ms. Odess, who has told us already that she's
15   expecting a baby and has a small child, would be required to
16   travel to St. Louis on Christmas day.  And you, Ms. Levy, who
17   appear to be traveling for some unknown reason are having to
18   stop at the side of the road to address these matters.  This is
19   no way to run discovery or to conduct yourselves in federal
20   court in terms of courtesy to the other side and
21   professionalism.
22           I don't know why you all are not seeking an extension
23   of the discovery deadline.  I've made all my orders conditioned
24   on that, but it seems to me that this is just not going to end
25   well, and somebody may end up being distracted on the road and

```
1    having an accident or somebody falling ill because of the
2    pressure, and that is not worth to anybody.
3             So the way I see things is you're not making any
4    progress if you both persist on just pointing the gun at each
5    other.  And what you just alluded to, the filing of this motion
6    and the back and forth without discussing things, again is an
7    example of the deadlock that we're in that doesn't seem to be
8    able to be resolved.
9             So I don't know that -- I don't know that anything can
10   be achieved here other than what I said, that whatever
11   depositions do not go forward, the recalcitrant party or the
12   offending party will have to pay the price by the way of
13   sanctions.  The only other escape hatch or escape valve would be
14   for discovery to be extended, let the holidays go through and
15   hope to get things done in a proper fashion.  But I don't hold
16   much hope for that because I have the feeling that as long as
17   you both continue in this warpath, you will continue to have
18   discovery deadlines that cannot be met because the time is being
19   wasted in fighting about minutia.
20            So I don't know that I can -- I don't know that I can
21   force Ms. Odess against her better judgment and her health and
22   her family concerns to leave her family on Christmas day.  I
23   don't know that I can make Ms. King, the corporate
24   representative, travel on a fixed date against her will either.
25   It seems to me that you all need to find solutions to these
```

1  problems.

2          Go ahead.

3          MS. ODESS:  Your Honor, if I may?

4          THE COURT:  Yes, ma'am.

5          MS. ODESS:  Two things.  Ms. Levy said that she had
6  only agreed to one date in Miami.  I actually sent you the two
7  notices that you can see.  They have both the times that it was
8  agreed to in the summer.  It was agreed that she would appear --
9  Ms. King would appear in Miami, Number 1.

10         Number 2, I have done everything in my power to try and
11 get this Court to understand this is not my office.  We call
12 them, we write to them, we don't get a response.  This is not a
13 both party situation, and I'm trying to do my best to echo this
14 because we don't get responsive calls.  Three discovery hearings
15 ago my associate informed you that we wanted a date to have them
16 give us all depositions because all we do is chase after their
17 office.  I wrote to Ms. Levy and I brought this up at the last
18 hearing.  I wrote to Ms. Levy and I said I'm soon approaching
19 the time period where I can no longer travel on an airplane.
20 I've requested these depositions four months prior to any of the
21 requested depositions that she has sought in this case.  I've
22 only take one deposition thus far which was last week.  Out of
23 the eight months that I've been requesting depositions, I said
24 give me the dates for the people I'm requesting for the month of
25 December, and then January when I can no longer travel, my

```
 1    people are local, I can effectuate those depositions very
 2    easily.  So let's extend discovery cut-off two months and we can
 3    then have all the depositions be completed, but let my
 4    depositions go first.  I requested them first and also because I
 5    won't be able to travel, and she wouldn't agree to that.  So
 6    extending discovery at this point does nothing for me because
 7    I'm not going to be able to get on a plane in three weeks.
 8            So with regard to Sherri King, the motion for
 9    protective order, that was filed today and she conferred with my
10    office today at noon and had -- we had given those cases
11    previously.  I had to pull all this research, I'm home with
12    pneumonia.  I pulled all of this research that combats the cases
13    that she says, you know, in her filing.
14            That's not true that her corporate representative does
15    not get the protection of the fact that just because she's the
16    corporate representative of where she lives.  She doesn't live
17    in St. Louis, Missouri, it's not the principle place of business
18    of the insurance company.  The principle place of business is in
19    Arizona, and she's already agreed to Miami on two separate
20    occasions.
21            So, I mean, this is -- I couldn't be obstructed any
22    further in this case as simply as it relates to the corporate
23    representative Sherri King.  And I have a paper trail to support
24    that she agreed to produce her in Miami on two prior occasions.
25            THE COURT:  All right.
```

1           MS. ODESS:  And I gave her the professional courtesy.

2           THE COURT:  I am hearing from Ms. Odess that Ms. Levy
3  refuses to join in a motion for extension of the discovery.  Did
4  I hear that correctly?

5           MS. ODESS:  About three weeks ago I sent her a letter
6  saying I would like to extend discovery cut-off two months and I
7  could have my depositions take place in December, we could have
8  yours take place, you know, up until the beginning of February,
9  and she wouldn't agree.  So I don't know what I'm supposed to
10 do.  I can only ask the Court for relief and unfortunately, what
11 it looks like is you have two people playing in the sandbox but
12 that's not the case.  And I have a paper trail, I have a chart
13 of all the calls where they go unanswered.  My office even has
14 to call from unmarked numbers because they screen our calls.

15           I mean, you know, I take the threats of the Court very
16 seriously when you say, you know, you're referring this to a
17 peer committee, and I really want to stress that this is a
18 one-sided issue, and I have all the documentation that I'm happy
19 to provide the Court, all the e-mails, the written
20 correspondence and the charts.  I get no relief.

21          THE COURT:  All right.  All right.  I will come through
22 on my prior warning.  I will refer this matter to the peer
23 review committee.  Let them make the appropriate determinations
24 on who's right and who's wrong.  And I will encourage Ms. Levy
25 to agree on a motion for extension of the discovery deadline and

```
1    I will consult with Judge Gayles regarding how to proceed in
2    this case since the schedule is not within my power.  But
3    basically, I don't see a way out of this as long as counsel
4    continue to exhibit the behavior that I have observed in the
5    past and that I continue to observe.  Mark my words, whoever is
6    --
7            MS. LEVY:  Your Honor, may I?
8            THE COURT:  Let me finish.
9            MS. LEVY:  I'm sorry, Your Honor.
10           THE COURT:  Whoever is acting inappropriately will be
11   treated accordingly.  Again, I cannot stress enough that
12   discovery is not a fight to the death, discovery is cooperative.
13   But this -- if you print the transcript of this hearing, you
14   will see that counsel are talking at cross purposes to each
15   other.
16           So at this point in time, what I will do is consult
17   with Judge Gayles, refer counsel to the Peer Review Committee
18   and if you all see fit to file a joint motion for extension of
19   discovery, do so.  If one side feels that they need to do so
20   without the consent of the other party, do so.  I cannot tell
21   you how to run your business, but the place where we're at right
22   now with what people are presenting to me, we're at a total and
23   absolute deadlock.
24           Anything else I can do for you at this time?
25           MS. LEVY:  Your Honor, if I can please, it's Ms. Levy.
```

```
 1      I would just like an opportunity to respond on the record to all
 2      that Ms. Odess has expressed to the Court.
 3              This is not one-sided.  This is actually more than
 4      that.  Ms. Odess took the deposition last week on Thursday of
 5      one of my client's representatives for six hours in a room with
 6      her coughing and being very sick even though I said look, if you
 7      really want to reset it, you can.  Long and short, she showed up
 8      at the hearing in front of Your Honor and I said if you're this
 9      sick, why didn't you reset it.  I'm not, you know, adversarial
10      as being portrayed.
11              I would just like to put on the record that her client
12      -- I was not getting dates from the Plaintiff.  And as far as I
13      know, Christmas Eve day, which is December 24th, is not a
14      holiday.  I could start as early in the morning to get them out
15      as late -- as early as I possibly can.  And moving forward, you
16      know, the law is the law and the case law is the case law, and I
17      just don't want the Court and/or counsel -- I mean, I feel that
18      this did take a wrong turn and I apologize to the Court for
19      that.  You know, I think both of us should -- and I think that
20      it's unfortunate, but we had to set some depositions and per the
21      Court's last ruling that everything will be done by December
22      31st, and unfortunately the dates that were being proposed, I
23      had been out of town on business in another case, and I am in
24      the car right now driving back.  And I -- you know, that's why I
25      could not meet in person to any status conference the last two
```

```
 1    days.  And I want the Court to be aware of that that if I could,
 2    I would.
 3            And to also make clear that Siegfried Rivera has 69 or
 4    70 lawyers, and they have coverage.  And as you can see from the
 5    hearings and as I have seen in other cases including trying a
 6    case, a partner came in to try the case for Ms. Odess, and I've
 7    had other lawyers appear at depositions as well as in front of
 8    Your Honor on other hearings, so I'm a small-time shop.  I don't
 9    have that kind of manpower, and I tried my best.  And my client,
10    Sherri King, just so the Court is aware, was making herself
11    available on December 26th leaving her -- and she was on
12    vacation.  She was going to be driving back from Ohio on
13    Christmas night, the night of Christmas Day, to be there for her
14    deposition on December 26th, so not to be in Miami as we had
15    already previously made counsel aware.
16            So right now, unfortunately, we are at a stand still
17    and, you know, I feel bad that it has gotten to this point due
18    to -- it's not one-sided, Your Honor.  I hope the Court is aware
19    of that.  And I guess we'll take it from there based on your
20    ruling.
21            MS. ODESS:  Judge, may I please just say something very
22    quickly?
23            THE COURT:  Yes, ma'am.
24            MS. ODESS:  This is a prime example of where statements
25    are made that are not supported by fact.  Ms. Levy said that she
```

```
1    didn't get dates for my client's corporate representative which
2    is why she had to unilaterally notice it on Christmas Eve.
3    Beginning on September 10th we gave her November 5th; on
4    November 19th, we gave her November 18th; on 12-11, we gave them
5    12-16 and 12-18 and today we gave them 12-20.  Not a single
6    response to any of those four e-mails did we receive.  We were
7    never told they weren't available, they just ignore our e-mails
8    when we give them deposition dates.
9              Then Ms. Levy just told you that last week I was very
10   sick.  I had viral pneumonia, that is correct.  Last week I
11   showed up at a hearing, I was super sick.  I'm at a firm that
12   has multiple disciplines of practice.  There's only one other
13   attorney that is assigned to the file which is my associate.  I
14   cannot just go pick people from my firm to cover things.
15   Before, yes, last week the deposition on Thursday, I asked Ms.
16   Levy to postpone the deposition one hour so I could get blood
17   work done at the doctor and she was not willing to give me that
18   professional courtesy.  I have that in writing.  So for her to
19   tell you right now that she told me that I could postpone the
20   deposition, that conversation not only didn't take place, but
21   she wasn't willing to postpone it one hour.  I mean, I had to
22   get an emergency motion for a protective order for the
23   deposition taking place on Friday because I have pneumonia, my
24   daughter has pneumonia and my -- I'm sorry, and the deponent
25   that was getting deposed last week was hospitalized for
```

1   bronchitis and she still wasn't willing to cancel the
2   deposition. You granted the protective order and then I gave her
3   dates for four days for the depositions to take place this week
4   and she -- we called her office, we gave her deadlines, she
5   didn't respond, and she's still nonresponsive.  And I told her
6   today that if I didn't have a response by 11 a.m. today, we will
7   assume that she's no longer interested in deposing the people,
8   and 11 a.m. came and went.
9       I don't know what further I can do, but I'm up against
10  the wall and it's -- the obstruction is absurd.
11      THE COURT:  All right.  As I said, I tried to give you
12  both fair warning to try to resolve things.  I will -- because
13  it appears to have fallen on deaf ears in the sense of there is
14  no progress in breaking the deadlock, I will carry through on my
15  prior promise to refer the conduct of discovery in this case to
16  the Peer Review Committee.  You can each make your case to them
17  and I will consult with Judge Gayles regarding how to proceed in
18  this case, because discovery is not going forward and the
19  consequences of that are obviously to the detriment of your
20  clients, not to yourselves personally.  It's not your money,
21  it's not your pocket that is being affected by this conduct.
22      I deplore that young lawyers should find themselves in
23  this situation.  It is not something that I enjoy referring two
24  young women lawyers to Peer Review Committee, but I find no
25  alternative to do that despite my prior fair warnings.

1      I will consult with Judge Gayles regarding what to do
2 in this case next.  You are free to seek an extension of
3 discovery if that's what you all wish to do.  I'm not going to
4 hold you to do that or not do that, that's your choice.  But
5 this case is off the rails and the only people who can put them
6 -- put the case back on the rail is the two of you.
7      I wish you happy holidays.
8      MS. LEVY:  Thank you.
9      (PROCEEDINGS CONCLUDED)
10                    * * * * *
11            **C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the
12 digital audio recording of proceedings in the above-entitled
matter.
13

14 _01/03/2020_              _/s/ Dawn M. Savino_
   Date                     DAWN M. SAVINO, RPR
15