<pre>
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                     CASE NO.  19-21625-CIV-DPG
 3

 4   GROVE GARDENS RESIDENCES
     CONDOMINIUM ASSOCIATION, INC.,
 5
                     Plaintiff,
 6
          vs.
 7
                                         Miami, Florida
 8                                       February 26, 2020
     ROCKHILL INSURANCE COMPANY and      Pages 1-40
 9   CERTAIN UNDERWRITERS AT LLOYD'S
     LONDON,
10
                     Defendants.
11   _____

12              TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING
                BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
13                 UNITED STATES MAGISTRATE JUDGE

14
     APPEARANCES:
15
     FOR THE PLAINTIFF:
16                          Siegfried Rivera
                            BY:  SUSAN ODESS, ESQ.
17                          201 Alhambra Circle
                            11th Floor
18                          Coral Gables, Florida 33134

19   FOR THE DEFENDANTS:
                            Levy Law Group
20                          BY:  ERIC DICKEY, ESQ.
                            3399 Ponce de Leon Boulevard
21                          Suite 202
                            Coral Gables, Florida 33134
22

23   TRANSCRIBED BY:        DAWN M. SAVINO, RPR
                            Official Court Stenographer
24                          400 N. Miami Avenue, 10S03
                            Miami, Florida  33128
25                          Telephone: 305-523-5598
</pre>

1                    P-R-O-C-E-E-D-I-N-G-S

2          THE COURT:  Grove Gardens Residences Condominium

3    Association, Inc. versus Rockhill Insurance Company, et al, case

4    number 19-21625-civil-Gayles.

5          Counsel, please state your appearances for the record.

6          MS. ODESS:  Susan Odess from Siegfried Rivera on behalf

7    of the Plaintiff, Grove Gardens Residences Condominium

8    Association, Inc.

9          MR. DICKEY:  Eric Dickey with the Levy Law Group on

10   behalf of the defendant insurance companies.

11         THE COURT:  All right.  Thank you very much.  So this

12   is our follow-up conference after the one that we had, I believe

13   it was, last week.  I had a couple of matters that I needed to

14   review, which I have done, and I am ready to provide you with my

15   decisions.  One of them was the motion for sanctions and the

16   other one was the challenge to the privilege log.

17         Now, I thought, and I may be wrong Ms. Odess, that you

18   were going to submit a notice of hearing with regard to some

19   additional issue.  Let me see, I have the order here setting

20   forth in detail the discovery disputes that require ruling,

21   which I think is something that we left off for today.  I'm

22   looking at the docket and I don't see a notice of hearing, Ms.

23   Odess.  So does that mean that things --

24         MS. ODESS:  No, we filed the notice.

25         THE COURT:  Uh-huh.

3

1       MS. ODESS:  We filed the notice of hearing.  It's

2   Docket Entry 150.

3       THE COURT:  150.  Okay.  Hang on just a second.

4       MS. ODESS:  I did that on the day of the hearing.

5       THE COURT:  Okay.  Okay.  Hang on just a second.  I

6   have it here.  So let me see, because there were notices of

7   compliance and things like that.

8       All right.  So what you need me to address is

9   interrogatories 2 through 18 and 20 through 25, they are

10  boilerplate objections and requests for admission are improper.

11  And do I have, in some fashion, those interrogatories and

12  answers as an attachment to the notice?

13      MS. ODESS:  Hold on one second, please, Your Honor.

14  The interrogatories that we are objecting to -- were they

15  submitted to the Court in advance of today's hearing?  Your

16  Honor, I don't believe that that was the case, but I can send

17  them to you right now.

18      THE COURT:  All right.  Send them to my e-mail address,

19  you know, the e-file, e-mail address.

20      MS. ODESS:  Yes.  Yes, Your Honor.

21      THE COURT:  That, and the request for admissions.

22      MS. ODESS:  I apologize, Your Honor.

23      THE COURT:  No problem.  No problem.  I had missed your

24  notice, but that's fine.  We're on the same page now.

25      MS. ODESS:  Okay.

1          THE COURT:  All right.  So then let me -- while you

2     send that, let me just tell you what my ruling is on the two

3     matters that I told you I promised I would take care of before

4     that Rockhill deposition that is coming up next week.  So on the

5     -- let me find my papers here.  Right.

6          So on the motion for sanctions that has to do with the

7     privilege log, I have reviewed thoroughly all the submissions

8     that have been made in connection with the motion, the response,

9     the reply, the exhibits and so on.  Having reviewed all of those

10    submissions, arguments and so on, I do not find that the

11    privilege log, as such -- well, both privilege logs, as such,

12    should be stricken because there were hearings in which I gave

13    Defendants the opportunity to correct mistakes, correct

14    omissions, correct misstatements and produce a final product,

15    which then I analyzed in terms of the timing of the work product

16    privilege inception.  That issue is under appeal to Judge

17    Gayles.  So in terms of striking the privilege log as such, I do

18    not find cause for doing that.

19         However, I will grant the motion for sanctions in the

20    sense of awarding to the Plaintiff the fees and costs incurred

21    by the Plaintiff to get us to the point of the, my word, new and

22    improved privilege log, although I know Plaintiff doesn't think

23    it's very much improved, but at least a working privilege log

24    that we can address and which I have addressed in terms of the

25    work product privilege claim and that I'm prepared to address in

1    terms of some of the attorney-client privilege claims.  And the

2    hearings for which I am granting reasonable fees and costs to

3    the Plaintiff, and that will be for preparation for and

4    attendance to the hearings, are the ones that took place on July

5    1st, September 6th, November 7th, November 26th and December

6    6th.  Those are the ones that are listed in the motion.  There

7    was a subsequent hearing on December the 11th.  I did not see

8    that hearing listed in the motion.  I will hear from Ms. Odess

9    if you intended to seek fees and costs for that.  Oh yes, you

10   did.  You did.  At the closing.  That's right.  So I'm adding

11   December 11th.  Yes.  I kept looking back and I got December

12   11th from the certificate and then I didn't see it listed.  But

13   you are seeking for December 11th; am I right?

14           MS. ODESS:  Yes, Your Honor.

15           THE COURT:  Yes.  So December 11th.

16           MR. DICKEY:  Your Honor, Eric Dickey.  If I may inquire

17   as to the fees and costs you are assessing against my clients,

18   is it just for the preparation and attendance at the hearings or

19   is it for something broader than that?

20           THE COURT:  It's in connection with those discovery

21   hearings that were required because of the repeated issues with

22   the privilege log which is the basis for the sanctions motion.

23   So preparation for and attendance at the hearings.  Those dates.

24   And I'll repeat them now that there's been clarification on the

25   one I had a doubt about.  July 1st, September 6th, November 7th,

1    November 26th, December 6th, and December 11th.  And you may

2    submit that statement of reasonable fees and costs, Ms. Odess,

3    and it will be a Rule 37 fee award in connection with discovery.

4    So I will issue an order once I review your submission.  So the

5    privilege logs are not getting stricken.  That is my ruling on

6    that.

7           MS. ODESS:  Your Honor, may I?

8           THE COURT:  Yes.

9           MS. ODESS:  I'm sorry.  May I ask a brief question?

10    One of the issues with the privilege log, the ultimate privilege

11    log was never revised, but there was communications on the

12    privilege log that were -- had objections that were work product

13    and attorney-client privilege, and they had communications with

14    experts that have been disclosed as testifying experts.

15           THE COURT:  I'm addressing those issues in connection

16    with the other matter that I promised I would address which is

17    the privilege log.  And once I've done that, if you still have

18    questions, feel free to ask me.  So I've now addressed the

19    motion for sanctions and you will receive a written order that

20    basically confirms the fees award for reasonable fees and costs

21    for preparation for and attendance to those hearings that I have

22    recited into the record.

23          The other matter that I promised I would look at, which

24    in part may answer some of your question and if not, then I will

25    be happy to come back to it, I required Ms. Odess to submit her

1    challenge to Rockhill's privilege log.  As you stated, as you

2    noted, my direction was to look at the ones where it was only

3    attorney-client privilege because the work product privilege

4    ruling was still pending.  I note, Ms. Odess, that what you did

5    is you targeted the -- number one, you told me correctly that

6    every claim was for both work product and attorney-client, and

7    then you targeted the dates that predate what I have found to be

8    the inception of the work product privilege so you would have

9    the benefit of that ruling should my determination on the

10   inception of the work product privilege withstand the

11   Defendant's appeal.  Now Ms. Levy complied with my requirement

12   to submit the documents that underlie your challenged entries,

13   Ms. Odess, and she also provided information regarding the

14   individuals.  Number one is this Mr. Chuck Corkins who I think

15   is somebody who you said they had required a third party

16   subpoena, so you deemed him to be basically, you know, making

17   any communication involving him putting it outside the

18   attorney-client privilege because he was like a third party that

19   was not within the umbrella.  And then the two experts, Bert

20   Davis and Janine Pardee.

21         Now, in Ms. Levy's submission, she described this

22   person, Chuck Corkins, as being with Peninsula Insurance Bureau,

23   the state-side adjusting firm for Lloyd's of London, and she

24   seems to be arguing that even though she required a subpoena for

25   his deposition, he is part of what she is calling the -- let me

1    see, she had a name for this.  The common interest exception.

2    And then for the experts, she said that based on the latest

3    version of Rule 26, the only three disclosure requirements are

4    the ones that relate to compensation, identify facts of data

5    provided to the expert and assumptions provided to the expert.

6           I have reviewed the communications with Mr. Davis and

7    Ms. Pardee with an idea of identifying if any of these

8    communications fell within those categories that require

9    disclosure.  So that's what I have done so far, but I wanted to

10   give you an opportunity, Ms. Odess, since Ms. Levy filed this

11   memorandum, I did not ask for it, but in a sense she is telling

12   me why she put these things on her privilege log, and I wanted

13   to hear from you any counter to these arguments that she's

14   making so I can properly evaluate the documents that I have

15   received.

16          MS. ODESS:  Sure, Your Honor.  So my associate is

17   actually pulling out the case law for a lot of these -- for this

18   memorandum because we were somewhat confused when she filed the

19   memorandum of law because the Court didn't require or invite Ms.

20   Levy to do so.  So we are in the process of drafting a formal

21   response.

22          THE COURT:  Okay.  Well, if you want to do that -- I

23   don't want to put you on the spot.  If you want to do that, I'll

24   give you the opportunity to do it and I'll review it again, you

25   know, with your input.  Obviously I'm not prepared to rule only

1   with Ms. Levy's input.  So if you want to do that, then I will

2   review your counter, whether you agree with her or not, and then

3   I will look at the -- I've already looked at the documents.  I

4   will look at them again and then determine if any of the

5   privilege claims should be overruled.  All right?

6           MS. ODESS:  That is much appreciated, Your Honor.

7           THE COURT:  Okay.  So I know we're trying to get this

8   done before March 3rd, so if you can get that memo to me by the

9   close of business tomorrow, at least I can get something out by

10  Friday.

11          MS. ODESS:  I will tell you, Your Honor, I mentioned

12  this at the last hearing and then we can talk about this at the

13  end, but I had a doctor's appointment yesterday and

14  unfortunately, I'm now going to need to cancel all remaining

15  hearings and depositions.  He said -- my doctor said yesterday

16  effective immediately, but I'm going to carry out the rest of my

17  week.

18          THE COURT:  Okay.

19          MS. ODESS:  Because as you know, it's really difficult

20  to do that on one day notice.

21          THE COURT:  Okay.  Then if we don't have the Rockhill

22  deposition coming up on the 3rd, then I don't have that time

23  pressure to deal with this and I don't want to put undue

24  pressure on you.  So you tell me when you can do this memorandum

25  and once I receive it, then I'll rule on these issues.

1        MS. ODESS:  If I could just have seven days, you know,

2   we will be able to submit it to the Court.

3        THE COURT:  All right.  So seven days from today being

4   Tuesday, so next Tuesday which, I think, is the 3rd?

5        MS. ODESS:  Yes, Your Honor.

6        THE COURT:  Tuesday the 3rd.  All right.  So response

7   memo to Docket Entry 157 due by March 3rd.  All right?  All

8   right.

9        MR. DICKEY:  Your Honor, if I may interject?

10        THE COURT:  Yes.

11        MR. DICKEY:  Certainly the Defendants have absolutely

12   no issue with them the Plaintiff canceling the deposition of the

13   Defendant, you know, and I am incredibly sympathetic, please

14   understand Ms. Odess, to the pregnancy issue, totally

15   understand, totally understand all the issues surrounding it.

16   But I am concerned that trying to therefore cancel all of our

17   depositions as well are really going to crimp the preparation of

18   this case, and frankly there are other lawyers and associates

19   that Ms. Odess mentioned that have worked on this case that can

20   defend those depositions.  It's not like taking a deposition

21   where it's more important that the lead partner be there.  So I

22   would just take issue on behalf of the Defendants to cancel all

23   of the depositions, even those that the Defendants are seeking.

24        THE COURT:  I think that we have been operating under

25   the assumption that whatever Ms. Odess could not handle before

1   going on maternity leave would be vaulted over to the July time

2   frame.  I don't think -- I know that argument has been made back

3   and forth as to other people in Ms. Odess' office should be able

4   to handle things, but I think she has made a pretty strong

5   argument that she is the one who has full dominion and control

6   of the case.  I'll let Ms. Odess address it, but that's the

7   assumption I've been operating under.  If I am wrong, then I'm

8   happy to, you know, correct it.

9           MS. ODESS:  And Your Honor, that is correct.  I'm lead

10  counsel on this case.  It is my case.  My clients have been

11  adamant that they want me to be the one that attends the

12  depositions.

13          In addition to that, if this Court will recall back in

14  December when I provided these dates, obviously that was before

15  all of my complications.

16          THE COURT:  Yes.

17          MS. ODESS:  I said should the cases resolve themselves,

18  I can make myself available sooner, which I tried to do once I

19  found out that the cases had, in fact, resolved themselves.

20  Unfortunately, I'm under strict orders from my doctor that I

21  have to slow down effective yesterday, and it puts me in a bind.

22  And, you know, I sent an e-mail to Ms. Levy, I'm happy to pay

23  for the change fee for her client's ticket for flying down here.

24  I'm also willing to, you know, contact the hotel to be able to

25  get a credit and pay any difference for when the -- you know,

1   the flight gets rearranged to come back to Miami as well as the

2   hotel.  And I said to Ms. Levy to please -- I called her office

3   multiple times, three times last week when I thought I had to

4   slow down, not that I had to terminate my workload, but I'm

5   willing to do whatever I can to try and schedule everything this

6   week so that, you know, everybody can have peace of mind that

7   everything will move forward in a timely fashion upon my return.

8          THE COURT:  All right.  So I will instruct the parties

9   to work cooperatively to reschedule the depositions that had

10  been contemplated for the month of March to the July and

11  following time frame, and I will also, in my order, direct the

12  parties to work cooperatively to come to some agreement

13  regarding, you know, any nonrefundable fees, any deposits,

14  anything along those lines.  If you can agree, agree.  If you

15  cannot agree, then you can bring those issues to me when we

16  resume litigation after Ms. Odess' confinement.

17          Again, Mr. Dickey, the request that the case go forward

18  in the absence of Ms. Odess is something that we have generally

19  discussed, but it did not seem like it was an option and as a

20  matter of fact, we have rescheduled some of the depositions that

21  both -- on both sides to the July time frame if it couldn't be

22  done now.  So I will not consider that request any further.

23          MR. DICKEY:  Understood, Your Honor.  If I may ask one

24  question?

25          THE COURT:  Sure.

1      MR. DICKEY:  With regard to some of the costs that my

2  clients have incurred with respect to the next couple weeks of

3  depositions, such as service of process costs to the extent

4  there were any, and you already addressed and Ms. Odess has

5  addressed hotel and flights, but are those additional costs

6  something that the Court considers something that should be paid

7  for by the Plaintiff under these circumstances?

8      MS. ODESS:  There was no service of process.  I agreed

9  to produce everybody.

10      THE COURT:  All right.  Listen.  So you all can work

11  that out.  If you can courteously and cooperatively work out

12  whatever nonrefundable costs may have been incurred to date,

13  then work it out.  If you cannot, bring it to my attention.  I'm

14  not going to spend any more time on that.  All right?

15      So then Stephanie, can you print what Ms. Odess sent

16  us?  Let me have that.  All right.  So we can now go to the

17  original purpose of this hearing which is the interrogatories

18  and requests for production.  Stephanie is printing for me the

19  actual request and I'm sure -- I'm assuming, Mr. Dickey, that

20  you have them in front of you and you're prepared to address

21  them?

22      MR. DICKEY:  Yes, Your Honor, I am prepared to address

23  them.  I'm hoping that what is being sent to you is responsive

24  so you have both the question and the response.

25      THE COURT:  I'm hoping that's what she sent me.  I

1    think that's what Ms. Odess intended to send me.

2            MS. ODESS:  Yes, of course.

3            THE COURT:  Of course.  All right.  So while we wait

4    for Stephanie to print, I have the notice here in front of me

5    that tells me that we need to look at Interrogatories 2 through

6    18 and 20 through 25 that you are contending that they're all

7    boilerplate objections and are nonresponsive.  And so we'll look

8    at those first.  Did you get it, Steph?

9            COURTROOM DEPUTY:  Yes, it appears to be several pages.

10           THE COURT:  Yes, I'm sure it is.  She just sent it,

11   yeah.

12           MR. DICKEY:  It's like 45 pages.

13           THE COURT:  45 pages.  All right.  Let's see.  I have

14   it on my computer also if I can pull it up.

15           MS. ODESS:  And once Your Honor is able to pull it up,

16   I've further simplified it to try and streamline the process.

17           THE COURT:  That would be good.  I hear the printer

18   printing.

19           COURTROOM DEPUTY:  I just printed this one because it

20   was three pages, but my printer is out of toner.  I printed them

21   in your office, I'm just going to go get them.

22           THE COURT:  Okay.  She's going to -- yeah.  She's going

23   to get it.  I can pull it up in the meantime.

24           All right.  I have the interrogatory answers in front

25   of me Ms. Odess, so you said you would be able to streamline it.

1        MS. ODESS:  Yes, Your Honor.  So if you turn to page --

2    to Interrogatory Answer Number 7.

3        THE COURT:  Okay.

4        MS. ODESS:  So I will tell the Court that Numbers 7

5    through 17, as well as Number 20, are all pertaining to the

6    factual basis for affirmative defenses.  As this Court is able

7    to see, every response is a boilerplate objection that then

8    cites at the very end to a list of records that are

9    nonresponsive to the factual basis for an affirmative defense.

10        My issue is twofold.  One, this Court has a standing

11   order that prohibits boilerplate objections.  If you're going to

12   object in federal court, it needs to be narrowly tailored and

13   specify the specific issues that you contend, you know, are

14   objectionable.  And then the second issue is it doesn't answer

15   the question.  I'm certainly entitled to know the factual basis

16   for affirmative defenses, and as you can see from the response,

17   which repeats itself from seven -- answer to Interrogatory

18   Number 7 through 17 as well as on Number 20.

19        THE COURT:  So 7 through 17 and 20 all read exactly the

20   same?

21        MS. ODESS:  Exactly the same, Your Honor.

22        THE COURT:  And they're all for the factual basis for

23   the affirmative defenses?

24        MS. ODESS:  Yes, Your Honor.

25        THE COURT:  All right.  So let me hear from Mr. Dickey

on that.

MR. DICKEY:  Yes, Your Honor.  And obviously we're jumping around here a little bit, so my notes don't track the same way that Ms. Odess presented this.  I was looking at, I guess, the first six.  I don't know if we're skipping those or not.

THE COURT:  Well no, she's challenging -- I'm sorry.  Let's make sure we're all on the same page here.  Let me --

MS. ODESS:  2 through 18 and 20 through 25.

THE COURT:  Right.  So you went -- you skipped over and you went -- you kind of took a bunch that are all similar so we can address them all together, right?

MS. ODESS:  Correct, Your Honor.

THE COURT:  All right.  So she just simply skipped over 2 through 6 and she started -- and she's doing initially 7 through 17 and 20.

MS. ODESS:  Number 20.  Yes, Your Honor.

THE COURT:  All right.  So --

MR. DICKEY:  And I'm looking over my notes now with respect to those issues.

THE COURT:  Okay.

MR. DICKEY:  And in looking those over, systemically the issues and the response is marginally going to be the same for all of them.  20 is a little different by the nature of it because it's an accord and satisfaction affirmative defense as

1   opposed to many of the others being exclusionary language,

2   policy language defenses, duties in the event of loss or

3   preexisting damage.  So there's a slight difference between the

4   two in terms of some additional grounds that apply to the first

5   bunch that don't apply to 20, but by and large, I will address

6   all of them collectively as well.

7                THE COURT:  Okay.  So have you provided in the answer

8   any facts or is your answer simply objection, objection,

9   objection?

10               MR. DICKEY:  These are objections, and then at the

11   conclusion after we give our various grounds for objections,

12   work product privilege, attorney-client privilege.  To the

13   extent it invades those, a lot of these invade claims processing

14   and thought processes that, at the end we then say here's all

15   the documents we've given, you can get your answer from these

16   documents.

17               THE COURT:  Right, but you seem to be -- I'm sorry.

18   You seem to be giving the same bunch of documents for

19   everything?

20               MR. DICKEY:  Yes, Your Honor.

21               THE COURT:  Well, that's not good enough.  You have to

22   be more specific.  So you either answer with the facts or you

23   answer with documents that specifically address that particular

24   affirmative defense.  This that you're doing is just a lot of,

25   you know, smoke, but there's nothing that can be seen behind the

1   smoke.  So I will require that you amend, I'll start with 7

2   through 17, specifically answer with facts or specific reference

3   to applicable documents, not a bunch of documents.  And if you

4   don't have any, then you can say you don't have any.  Is that

5   clear?

6          MR. DICKEY:  I understand.  Yes, ma'am.

7          THE COURT:  What about 20?  You said 20 was a little

8   different.

9          MR. DICKEY:  20 is only narrower in the sense that for

10  7 through 17, they're largely driven by expert testimony and

11  expert analysis, whereas 20 is an accord and satisfaction

12  defense and that's driven by expert discussion.

13         THE COURT:  All right.  So expert testimony and expert

14  analysis is not facts.  Facts are if it's like preexisting

15  damage, then fact is on such and such a date, there was another

16  hurricane or whatever or there was damage by another hurricane,

17  or if that is contained in your expert report, then the facts

18  from that expert report.  I'm not asking you to disclose any --

19  I'm not directing you to disclose any protected materials, but

20  if you have an affirmative defense, just like a claim, they need

21  to be supported by facts.  And if there are no facts, then

22  they're not an affirmative defense.  So 20 -- you said you had

23  more for 20?

24         MR. DICKEY:  No, ma'am.  I think, frankly, 20 is

25  narrower than my response and argument as to 7 through 17.

1        THE COURT:  All right.  So you're prepared to amend
2    then also?
3        MR. DICKEY:  Based on the Court's ruling, I think
4    that's appropriate.
5        THE COURT:  Okay.  All right.  So we've taken care of
6    those.
7        Now you can jump, Ms. Odess, to -- we still have 2
8    through 6 and 21 through 25.
9        MS. ODESS:  Sure, Your Honor.  So if we go to 21.  21
10   through 24 pertains to experts.  And I'm asking for, you know,
11   you know, other cases where they've hired these experts.  I'm
12   asking for the amount of income generated as it relates to this
13   particular case.
14       THE COURT:  Isn't that all in the expert reports?
15   Isn't that all required in the expert report?
16       MS. ODESS:  I don't have that information.
17       THE COURT:  They haven't turned in their -- have they
18   served expert reports?
19       MS. ODESS:  I do have expert reports but I don't have,
20   you know, the amounts, all cases that they've been hired by the
21   insurance company.  I don't have case lists for everyone.  I
22   don't have the amount of income generated as it relates to this
23   claim.  In fact, one of the issues that I've been trying to
24   confer with Ms. Levy on is we've tried to send out a subpoena to
25   one of the experts, and there's an objection that's currently

1    standing, obviously it's not before the Court right now, but

2    we're trying to obtain this information.  So I've tried by

3    interrogatory as one of the mechanisms to be able to obtain

4    answers, and they've objected to 21 through 24.

5            THE COURT:  So they're saying that they're protected by

6    work product from telling you who else they have used -- what

7    other cases they have used these experts in?  Isn't that a

8    matter of public record?

9            MS. ODESS:  I believe so, Your Honor.

10           THE COURT:  Are these experts -- I'm sorry.  One more

11   question.  The experts retained in this case, are you limiting

12   this to testifying experts?  Because obviously consulting

13   experts --

14           MS. ODESS:  Of course.

15           THE COURT:  All right.  So --

16           MS. ODESS:  Of course, Your Honor.

17           THE COURT:  So limiting it to testifying experts.  So

18   Mr. Dickey, what's your response on that?

19           MR. DICKEY:  Yes, Your Honor.  And first, the phrasing

20   of the question as the interrogatories were written certainly

21   didn't limit it to testifying experts.

22           THE COURT:  All right.  So --

23           MR. DICKEY:  In fact --

24           THE COURT:  I've modified it now to limit it to

25   testifying experts.

1          MR. DICKEY:  All right.  So I think it's more

2    appropriate to take these individually because these should not

3    -- these 21 through 24 be dealt with in a block fashion, because

4    frankly, if you take 22 for instance, and I'll read it to the

5    Court --

6          THE COURT:  All right.  Hang on.  So you don't want to

7    do them in a block, so let's start with 21.  What's the

8    objection to 21 after I limited it?

9          MR. DICKEY:  The objection here is you're asking will

10   Rockhill or its counsel have hired the experts retained in this

11   case.  They're asking me to disclose where I may have hired

12   experts for other cases.

13         THE COURT:  All right.  All right.  So you want it to

14   be --

15         MR. DICKEY:  Unrelated to this.

16         THE COURT:  So you want it to be "defendant" as opposed

17   to "counsel"?

18         MR. DICKEY:  I think it's improper for them to ask us

19   who I have hired in other cases that may not be disclosed, or

20   they may have just been retained or they may not be testifying

21   experts in other matters.  I think the rule is pretty specific

22   as to what the experts have to say, and I would suggest to the

23   Court that rule is probably the better place to deal with it

24   than 21 through 24 which is, if you link 21 to the other

25   question, we get increasingly bad questions.  I mean, bad by the

1  nature of they're unclear, they're confusing and they're hard to

2  understand what's being asked.

3          THE COURT:  All right.  So I'm clarifying it.  I'm

4  making it testifying experts utilized by Plaintiff.  And how far

5  do you want to go back in time, Ms. Odess?  You seem to have not

6  put any time limitation on this.

7          MS. ODESS:  I would say within the last five years and

8  it should be Defendants' experts, not Plaintiff's experts.

9          THE COURT:  Yeah, right.  I'm sorry.

10          MS. ODESS:  And just for a point of clarification, the

11  reason -- I mean, when you take depositions of experts, as this

12  Court is well aware, a common question that is always asked of

13  experts is has your law firm or the lawyer previously hired you

14  on other cases.  That line of questioning is fair game and, you

15  know, based off of my experience with Ms. Levy in prior cases,

16  she hires the same experts.  So certainly testifying experts

17  that have been disclosed, I think, is fair game.

18          THE COURT:  Okay.  I am going to limit it to testifying

19  experts hired by Rockhill in the past five years.  And then that

20  would be -- it's not the universe of testifying experts, but it

21  would be the cases where the same testifying experts here have

22  been hired as testifying experts in other cases.  So the answer

23  is the cases that fit this description, hired by Rockhill as

24  testifying experts in the past five years that coincide with the

25  testifying experts in this case.  All right?

1          MS. ODESS:  Thank you, Your Honor.

2          THE COURT:  All right.  That takes care of 21.

3          MR. DICKEY:  Your Honor, turning to 22, my issue with

4 22 is no knock on Ms. Odess, this is just a bad question.

5 Please list the amount of income generated or billed for experts

6 or consultants related to services provided to Rockhill or its

7 counsel concerning this matter.  That's pretty vague and hard to

8 follow.

9          THE COURT:  Now that question, the expert in his report

10 has to say how much he has been paid.  He or she has been paid

11 in his expert report.  Am I correct?

12          MS. ODESS:  That is not a requirement to be contained

13 within the expert report, but that is an area of inquiry that I

14 can obtain information and solicit information.

15          THE COURT:  I thought -- I'm sorry.  I thought the

16 expert reports include how much they're getting paid on the

17 case.  I've seen that time and again in the expert reports.

18          MS. ODESS:  Sure.  There are many experts that include

19 that information, this is their hourly rate, this is their

20 testifying and this is their fee schedule.  However, I know from

21 dealing with some of the experts in this case, you know, they've

22 generated a lot of invoices.  We have not received all of those

23 invoices, so I tried to confer pursuant to this Court's order

24 with Ms. Levy on multiple occasions.  And so if there was an

25 issue with the phrasing of this question, I could have altered

1    the question or, you know, rephrased the question to, you know,

2    address their concerns, but this is the first time hearing of

3    it.  I can certainly limit it to experts rather than

4    consultants, and I just want very simply to know how much the

5    experts -- the testifying experts that have been disclosed in

6    this case, how much they've billed for their time as it relates

7    to this specific case.

8              THE COURT:  And you are --

9              MR. DICKEY:  I am --

10             THE COURT:  I'm sorry.  And you are telling me that

11   this is not one of the items that is required in the expert

12   report?  Even though I've seen it time and again?

13             MS. ODESS:  I do not believe that it's a requirement to

14   be contained within the expert report, Your Honor.  It's just an

15   area of listed information, unless Mr. Dickey has additional

16   information.

17             MR. DICKEY:  I tend to agree with Ms. Odess, I don't

18   think it's a requirement of the expert report.  I've seen it in

19   some, haven't seen it in others.  But universally, the place

20   where I've seen it addressed is in the first hour of the

21   expert's deposition.  How much have you been paid so far.  It's

22   going to be the most recent, most updated number, and probably a

23   far better place to ask it than us playing with, respectfully,

24   Interrogatory Number 22.

25             THE COURT:  All right.  I will deny that one without

1      prejudice to inquiry during the deposition of the experts.

2           Next.  23.

3           MR. DICKEY:  Your Honor, the Defendants' issue with 23

4      is, again, it's not a good question.  Please list the amount of

5      income generated or bills for services provided to Rockhill or

6      its counsel concerning all claims in cases for the last ten

7      years.  Are they asking for all the income Rockhill has

8      generated from the sale of policies?  What are they asking for?

9      Because it's not asking for expert information there.

10          THE COURT:  I'm sorry.  This is to -- provided by whom?

11     To Rockhill or its counsel?

12          MS. ODESS:  Similar to my -- what I said previously, it

13     should have been -- the word "expert" was omitted from this.  I

14     was just specifically wanting to know how much the experts have

15     generated from work related to Rockhill.  We had a case

16     previously against Rockhill where one of the experts generated

17     $3 million.  I was able to get that information in discovery.

18     I'm unable to get that information here.

19          I can rephrase the question so that it's specifically

20     limited to experts or the disclosed experts, how much they've

21     made over the last ten years from Rockhill-related work.

22          MR. DICKEY:  Your Honor, I would take issue with the

23     time frame.

24          THE COURT:  Okay.  So how are you -- are you going to

25     resubmit that Question 23 then?

1    MS. ODESS:  I can certainly do that and I could -- but

2    this is one of the issues that I have that I try to confer with

3    opposing counsel so we can work out these issues in advance

4    without having to take up the Court's time.

5    THE COURT:  Okay.  Well, it didn't happen so let's get

6    this wrapped up.  So I've given you my ruling on 7 through 17

7    and 20.  I've given you my ruling on 21.  22, I've denied

8    without prejudice to inquiry at depo.  23, you said you're going

9    to rephrase it.  And then you can -- I don't know on your time

10   frame how quickly you can rephrase it and get it back, but, I

11   mean --

12   MS. ODESS:  I'm sure I can do that within the next 24

13   to 48 hours.

14   THE COURT:  So that's why I want to get a time frame on

15   this.  So resubmit Number 23 by -- to the other side by -- today

16   is Tuesday, by Thursday and then I will give seven days for

17   response.  Okay?

18   MS. ODESS:  Thank you, Your Honor.

19   THE COURT:  That takes care of 23.

20   MR. DICKEY:  Thank you, Your Honor.

21   THE COURT:  What about 24?  Annual income.  That seems

22   to be a little bit along -- so that's how much they earned?

23   These experts?  How much they earned for their --

24   MR. DICKEY:  Your Honor, here's the issue.  We answered

25   this one and said no knowledge.  She is asking for --

1          THE COURT:  Yeah.

2          MR. DICKEY:  -- the annual income.

3          THE COURT:  Right.  Of the experts.  Right.

4          MR. DICKEY:  Without limitation, and they're

5    plaintiff/defendant's split.  We would have no idea.

6          THE COURT:  Okay.  I got it.  I got it, Mr. Dickey.

7    This question is addressed to Rockhill for information that it

8    is the experts who would be answering that.  So you can ask

9    those questions of the expert at the depo.  So 22 and 24, the

10   ruling is the same.  And then as long as we're down here, 25.

11         MS. ODESS:  Yes, Your Honor.  So Number 25 --

12         THE COURT:  Oh, I've taken care of that.  Honestly at

13   this point in time, there's a legal ruling on it.  I think 25

14   has become moot, right?  They relied on the declaration, right?

15   So I'm not going to deal with 25.  Okay.

16         So go back to two.  2 through 6 please.

17         MS. ODESS:  So Number 2 is a very important question

18   for us just because as this Court knows, there are a lot of

19   adjusters that came on to the scene, as well as experts and

20   consultants, and we don't have that information readily

21   available to us, and it's not ascertainable from the documents

22   that they pointed us in the direction of as the majority of

23   those documents are the Plaintiff's documents just replicated

24   four and five times over.  And so they have a form objection

25   that's in violation of this Court's order, as well as, you know,

1    just pointing us to records that are nonresponsive.

2         THE COURT:  All right.  Well, there is some work

3    product protection being invaded by this question.  So I think

4    that what you're looking for is whatever -- I mean, even reports

5    of people that they're not using, I just don't know what you're

6    going to gain by this, Ms. Odess.  I'm at a little bit of a loss

7    of what you want.

8         MS. ODESS:  I can clarify.

9         THE COURT:  Yeah.

10        MS. ODESS:  So certainly, you know, if you have

11   nontestifying consultants, which I do not believe that they

12   have, but if they were to have nontestifying consultants, I

13   would not be asking this Court for a copy of their report.  The

14   identity of who went to my client's property, I should be able

15   to know all individuals that came out to my client's property to

16   inspect.  And so I'm asking for the names of the people that

17   came out to the property, the dates for the investigation.  When

18   I took the deposition of Chuck Corkins as well as the corporate

19   representative of Lloyd's, you know, that information was not

20   readily available for them because they didn't have their file

21   with them, and so I hit kind of a wall time and time again

22   because they weren't able to give me the dates of their

23   inspections and who attended those inspections.  It was

24   speculative at best.

25        THE COURT:  All right.  So you're saying you want to

1    know the name of every person that they sent to your property;

2    that you know it from your own, but you want to know it from

3    them.  And this is just simply who came to your property and

4    when.  Correct?

5           MS. ODESS:  Correct, Your Honor.

6           THE COURT:  And then -- and that's public knowledge

7    because if they came to your property, you saw them.  So can you

8    rephrase this question to answer those two questions -- to ask

9    those two questions, or do you want me to modify it right now?

10   Who came to the property and when in connection with the

11   hurricane.

12          Mr. Dickey, are you prepared to answer that without

13   need for rewriting?

14          MR. DICKEY:  I think the easier thing to do would be to

15   answer the question the Court just posed which is who went to

16   the property and when, question mark.

17          THE COURT:  Okay.  Number 2, who went to the property

18   and when.  Okay.  So answer that one.  So no need to rewrite it,

19   and we'll talk about when to do all this supplemental answers.

20          How about 3?

21          MS. ODESS:  I can skip Number 3, Your Honor.

22          THE COURT:  Okay.  Skip 3.  All right.

23          Four?

24          MS. ODESS:  Number 4 is asking if they claim that

25   anything isn't covered under the policy, and we have the same

1    formulaic objections and then the citation to lump sum of

2    record.

3         THE COURT:  Would this be also an affirmative defense

4    of noncoverage, denial of coverage, or what?  How is this

5    different from affirmative defense?

6         MS. ODESS:  In theory, you know, if it was a flat-out

7    denial of the insurance claim, then it would be an affirmative

8    defense.  But there was a payment made, so I'm asking if it's

9    their position that the policy is not -- if this claim isn't

10   covered under the policy for whatever reason, for them to let me

11   know why.

12        THE COURT:  Well, did you get a letter explaining their

13   coverage decision?

14        MS. ODESS:  I have a reservation of rights letter and

15   then I have a letter enclosing payment.

16        THE COURT:  Okay.  Because here again, you may be

17   impinging on either work product or attorney-client in terms of

18   the decision of what to cover and what not to cover.  It would

19   need to be the facts, the facts supporting the noncoverage.  You

20   can't just ask them to explain their decision.

21        Let me hear from you, Mr. Dickey, on how you would

22   propose to answer this interrogatory, if at all.

23        MR. DICKEY:  Your Honor, I think the Court has hit it

24   -- hit the nail on the head.  They're diving straight into my

25   attorney-client, work product analysis and how I plan to defend

1    the case.  As to the particular policy provisions that apply,

2    they can be found in a couple of different places.  We raised

3    them as affirmative defenses.  There are dozens of policy terms

4    that I've raised as when you're talking about the affirmative

5    defense decisions.  You also see the letters we've written where

6    we're citing the policy provisions.  I think, frankly, that's

7    satisfactory for purposes of this question.  We told them the

8    policy language that's at issue, and I think that's all that's

9    required.

10        THE COURT:  All right.  All right.  It seems to me that

11   their reservation of rights letter should have told you what

12   they are covering and what they are not covering, r in some

13   fashion given you some explanation.  But you seem to be, Ms.

14   Odess, at a loss to understand what they cover and what they

15   didn't cover?  I think that's what I'm getting from you?

16        MS. ODESS:  No, Your Honor.  So the reservation of

17   rights letter is a form letter that is not necessarily specific

18   to my client's claim.  And so I'm asking -- you know, in the

19   reservation of rights letter they cite to provisions that are

20   inapplicable to my client's case, so I'm asking if they are

21   specifically claiming that there isn't coverage for whatever

22   reason, to tell me the reasons as to why they believe it's not

23   covered under the policy.  Not give me every possible exclusion

24   under the sun that, you know, may or may not apply.  It's not

25   work product -- if they're claiming that there's a denial of

1    coverage for whatever reason, I'm entitled to know why.  I'm not

2    -- you know, it's not fair for them to say well, there's an

3    exclusion for things that have absolutely no bearing on this

4    lawsuit.

5         THE COURT:  But I see what you're saying, they paid you

6    in part.  So maybe they themselves haven't defined -- hmm.  I'm

7    going to deny this without prejudice to address it at the

8    deposition of the corporate representative, because I think this

9    lends itself to that.  You can just ask him straight out, you

10   know, what did you cover, what didn't you cover as opposed to in

11   this format of an interrogatory.

12        MS. ODESS:  That's fair, Your Honor.

13        THE COURT:  Okay.  Okay.  So we have 5 and 6 left.

14        MS. ODESS:  Number 5 is probably the easiest one of

15   them all.  I'm asking -- they had raised that there was damage

16   to the property that pre-existed Hurricane Irma, and I'm asking

17   them to explain the conditions of the property at the time that

18   they placed insurance at the property.  I'm also asking them to

19   list the date of all pre-loss inspections of the property, who

20   conducted those pre-loss inspections and state whether any

21   photographs were taken.

22        THE COURT:  So this is a little bit like -- it's a

23   little bit like Number 2; who, went and when?

24        MS. ODESS:  Yes, but it's prior to the date of loss.

25        THE COURT:  Right.

1    MS. ODESS:  So if they're saying that my client's

2    property had damage pre-Irma, I want to know why they're saying

3    that.  What was the condition at the time that they placed

4    insurance because as this Court is well aware, they take my

5    client's property in its current condition at the time they

6    placed insurance.  So I want to know at the time they placed

7    insurance what was the condition.  I want to know, you know,

8    what pre-loss inspections took place.  I'm only aware of one.

9    THE COURT:  Okay.  So hang on just a second, because

10   obviously some of the post-loss inspections -- so for example,

11   in the roof, sometimes the inspectors say oh, this roof has

12   repairs so that means it had problems before.  So I don't know

13   that you can make that connection so straightforward.  But what

14   -- I'm sorry.  But what I will grant you is for Number 5,

15   pre-loss inspections; who and when and what and photographs.  If

16   -- I don't know if photographs -- I don't know photographs, if

17   there are any.

18   MR. DICKEY:  If there are any, understood.

19   THE COURT:  All right.

20   MS. ODESS:  Thank you, Your Honor.

21   THE COURT:  Okay.  And then finally Number 6, Rockhill

22   has a counterclaim, and they haven't told you how much money

23   they want or is it a counterclaim for noncoverage?

24   MS. ODESS:  There is a counterclaim and they have not

25   told me how much money they are seeking.

THE COURT:  What kind of counterclaim is it?

MR. DICKEY:  It's a declaratory judgment counterclaim.

THE COURT:  Right.  So there's no damages, it's just a dec action?

MS. ODESS:  Well, according to the corporate representative of Lloyd's of London, there is a monetary aspect associated with this.

MR. DICKEY:  And Judge, so there's two issues.  If you look at the wherefore clause of the counterclaim, we're asking for a judicial determination of the rights and the usual language related to that and pray for a judgment in their favor specifying -- specifically declaring that no payments are owed to Plaintiff/Counter-Defendants.  I'm sorry?

THE COURT:  So it's a dec action, right?

MR. DICKEY:  It's a dec action.  Ms. Odess is correct with respect that the corporate representative of Lloyd's referenced an overpayment, and I believe that was actually described, the amount and the circumstances, in the deposition.

MS. ODESS:  That's partially correct.  He said that they were seeking monetary damages, but he didn't have the exact amount of what they were seeking.  So if they are just seeking, you know, a declaratory relief, I would like them to specify that.  I think that's fair game.

THE COURT:  All right.  So Number 6 is going to be what damages are sought in the counterclaim, and you can just say if

1    it's just dec action, it's only a dec action.  If you're seeking

2    refund of overpayments, then you can say that, what relief

3    sought in counterclaim.

4            MR. DICKEY:  Understood, Your Honor.

5            THE COURT:  All right?  All right.  So now we need to

6    address the admissions.

7            MS. ODESS:  Yes, Your Honor.

8            THE COURT:  And that one is -- let me just see what you

9    have in the admissions.  All right.  Admissions is 1, 2, 4, 7, 8

10   and 9.  And you're saying that those are improper.  1, denied as

11   phrased.  Admit that the property sustained Hurricane Irma

12   damage.  Denied as phrased?

13           MS. ODESS:  Yes, Your Honor.

14           MR. DICKEY:  Yes, Your Honor.

15           MS. ODESS:  Pursuant to the Rule 36 A4 through 6,

16   that's not a proper response.  You either admit it or you deny

17   it or you say why you can't, you know, properly answer the

18   question.  And then if there's an objection, it needs to be, you

19   know, a genuine issue for trial.  You just can't just object.

20           THE COURT:  So 1, 2, 4 they are denied as phrased,

21   right?

22           MS. ODESS:  1, 2, 4, 7 are denied as phrased.

23           THE COURT:  All right.  So those you can either admit,

24   deny or object.  Okay?  So you can redo those.

25           MR. DICKEY:  Understood, Your Honor.

1       THE COURT:  1, 2, 4 and 7, deny, admit or object.  And

2   then now we have 8 and 9.  Eight, it's an objection, irrelevant

3   and otherwise denied; and 9, objection, irrelevant and otherwise

4   denied.  So either object or admit or deny.  So the ruling is

5   the same.  Just follow the rule.  So you can't object and

6   otherwise deny.

7       MR. DICKEY:  Your Honor, just so the Court's aware,

8   we'll probably be sticking with an objection on those.

9       THE COURT:  Yes.

10      MR. DICKEY:  So--

11      THE COURT:  So objection -- right.  So follow the rule.

12  Just, you know, objection that you can't answer it and whatever

13  the rule lets you do; admit, deny, object and give the reason

14  for your objection.  All right?  So you can redo those.

15      MR. DICKEY:  Understood.

16      THE COURT:  Now, let's talk about on the one that is

17  being resubmitted.  I've given you deadlines.  On the ones that

18  need to be amended, what do you need?  Do you need -- if I give

19  you ten days, can you do it?

20      MR. DICKEY:  I think ten days is going to be tight.

21      THE COURT:  Okay.

22      MR. DICKEY:  And candidly, given the posture of the

23  case with Ms. Odess going out and the case essentially stalling,

24  I'm not sure we're under the same quote, unquote, gun, pushing

25  us that we had.

1          THE COURT:  Well, but I want to bring this part of it

2     to a close so that when we pick up, it's not left dangling.  So

3     I'll give you -- if you think ten days is not enough for you to

4     gather up this information, I will require that you do it on a

5     rolling basis to be completed in 14 days.  Because some of them

6     you can do right away.  All right?

7          MR. DICKEY:  Yes, ma'am.  And that's for both the

8     interrogatories and the requests for admission, correct?

9          THE COURT:  Yes, right.  Rolling basis to be completed

10    in 14 days.

11          23, Ms. Odess will resubmit by Thursday and you have

12    seven days for that response.

13          Anything else I can do for you at this time?

14          MS. ODESS:  Yes, Your Honor.  Just in order to preserve

15    the record, I would like to seek fees and costs associated with

16    bringing these discovery issues before the Court.

17          THE COURT:  Okay.  Well, I granted it in part and some

18    of them I denied.  So I am not going to grant fees and costs on

19    this one.  All right.

20          Anything else?

21          MS. ODESS:  My very last question.  This Court had set

22    a discovery hearing for March 13th.

23          THE COURT:  Oh, yeah.  You won't be around, right?

24          MS. ODESS:  Unfortunately, I will not be.

25          THE COURT:  Yeah.  All right.  I'll cancel that.

1          MS. ODESS:  And so as it relates to that, what we had

2     discussed at the last hearing was the Lloyd's of London

3     discovery issues which mirror these, the Court had indicated we

4     would defer those until my return.  I just wanted to make sure

5     that that's still the Court's preference.

6          THE COURT:  Yes.

7          MS. ODESS:  Because there's other issues that have been

8     mounting, and I know the federal courts like to bring it before

9     the Court within 30 days.  I just wanted to make sure that we're

10    just tabling them until my return.

11         THE COURT:  Yes.  I am tabling everything that requires

12    your attention until you can be back in business.

13         MS. ODESS:  Thank you, Your Honor.

14         THE COURT:  You will not be prejudiced.  And

15    Mr. Dickey, you can communicate this to Ms. Levy, it's my ruling

16    that the Plaintiff will not be prejudiced by the fact that some

17    things will be brought to the Court's attention again after our

18    hiatus.  And --

19         MR. DICKEY:  Okay, Your Honor.

20         THE COURT:  And let me ask -- let me ask Ms. Odess,

21    would you like me to include in this order a report that you --

22    that your confinement essentially has commenced and that --

23         MS. ODESS:  Yes, Your Honor.

24         THE COURT:  And that I am -- as far as, you know,

25    discovery, I am suspending all discovery until you are back in

1    active duty.  All right?

2         MS. ODESS:  That would be much appreciated because we

3    have a hearing before Judge Gayles.

4         THE COURT:  When is that?

5         MS. ODESS:  On the 11th, and I was going to file a

6    motion to postpone the status conference.

7         THE COURT:  Okay.  I will -- wait until I issue this

8    order, which should come out either at the end of the day today,

9    though it's a little late, maybe tomorrow.  So wait until this

10   order comes out that says I'm staying discovery, and then file

11   the motion to continue the status conference right after that if

12   you can.

13        MS. ODESS:  Thank you, Your Honor.

14        THE COURT:  All right.  All right.

15        MR. DICKEY:  Your Honor, one inquiry if I may.  I

16   understand you're going to enter some language in the order with

17   regard to essentially stalling discovery until Ms. Odess comes

18   back.  I don't mean that in a bad way by any stretch of the

19   imagination.  I just want to ask if we're putting some type of

20   date on that, and I mean that --

21        THE COURT:  We've been talking about the -- we've been

22   talking about the July time frame.  We've been vaulting

23   everything over until July based on her estimate that it would

24   be a three month maternity leave, I believe.  But obviously you

25   never know, you know, things how they happen.  So I'm just

1    phrasing it until she -- I'm just -- I'm just staying discovery

2    during her confinement and then --

3            MS. ODESS:  Mr. Dickey, you're welcome if you want to

4    call me after this hearing, we can talk about it.  And then also

5    your client's fees, I'm happy to work everything out and give

6    you kind of the most up-to-date information I have.

7            MR. DICKEY:  I appreciate that, Ms. Odess.

8            THE COURT:  All right.  All right.  Thank you.

9            Good luck to you, Ms. Odess.  Good luck with the baby.

10   All right?  Take care.  Take care of yourself.

11           MS. ODESS:  Thank you.

12           MR. DICKEY:  Thank you, Your Honor.

13           THE COURT:  All right.

14           COURTROOM DEPUTY:  Court's adjourned.

15           (PROCEEDINGS CONCLUDED)

16                       *  *  *  *  *

17                 C E R T I F I C A T E
     I certify that the foregoing is a correct transcript from the
18   digital audio recording of proceedings in the above-entitled
     matter.

19

20   3/16/2020               /s/ Dawn M. Savino
     Date                    DAWN M. SAVINO, RPR

21

22

23

24

25

**PROCEEDINGS RECORDED BY THE COURT'S DIGITAL AUDIO RECORDING SYSTEM**
**TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY**
**AND COMPUTER-AIDED TRANSCRIPTION**